UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**AMERICAN CENTER FOR**             )
**EQUITABLE TREATMENT, INC.,**      )
                                    )
    **Plaintiff,**           )
                                    )
    **v.**                   )    Case No. 16-cv-01820 (APM)
                                    )
**OFFICE OF MANAGEMENT AND**        )
**BUDGET,**                         )
                                    )
    **Defendant.**           )
_____ )

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Plaintiff American Center for Equitable Treatment, Inc., brings this Freedom of Information Act ("FOIA") action against Defendant Office of Management and Budget ("OMB"), following its request for disclosure of records related to, among other things, (1) the Paperwork Reduction Act, its implementing regulations, and OMB's guidance concerning the Act; (2) OMB's review of "information collection requests" and petitions for review of collected information; and (3) OMB's interpretation or application of certain regulations of the U.S. Patent and Trademark Office. In response to Plaintiff's FOIA requests—there were three—OMB produced some records in full, some in part, and withheld others in their entirety.

Both parties have moved for summary judgment under Federal Rule of Civil Procedure 56. The sole issue before the court is whether Defendant conducted an adequate search in response to Plaintiff's three FOIA requests. For the reasons set forth below, the court holds that OMB has not sufficiently explained why the parameters of its search—specifically, the time limits and search

terms it used—were adequate to identify all responsive records. In all other respects, OMB's search was reasonable. Accordingly, the court grants in part and denies in part Defendant's Motion for Summary Judgment and denies in part Plaintiff's Cross-Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

In 2016, Plaintiff submitted three separate FOIA requests to OMB. Pl.'s Cross-Mot. for Summ. J., ECF No. 17 [hereinafter Pl.'s Opp'n], Pl.'s Statement of Undisputed Material Facts, ECF No. 17-1 [hereinafter Pl.'s Stmt.], at 1,[1] ¶ 2; Def.'s Reply and Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 20 [hereinafter Def.'s Reply], Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts, ECF No. 20-1 [hereinafter Def.'s Resp. Stmt.], ¶ 2. The requests and the agency's responses are set forth below.

#### 1. *Plaintiff's First FOIA Request (2016-096/2016-128)*

On June 10, 2016, Plaintiff submitted its first request ("First Request") to OMB, seeking:

> (1) All records referencing or concerning the Paperwork Reduction Act, 44 USC § 3501 *et seq.*, its implementing regulations in 5 CFR Part 1320, and [OMB] guidance issued to agencies AND United States Patent and Trademark Office (PTO) rules 37 CFR 1.111, 1.115, 1.116, 1.130, 1.131, and/or 1.132, including but not limited to (a) all Information Collection Requests (ICRs), (b) OMB Forms 83-I, 83-C, 83-D, 83-E and certifications and supporting evidence thereto, (c) estimates of paperwork burden and their derivation pursuant to 5 CFR 1320.8(a)(4), and (d) Supporting Statements referencing or concerning the PTO rules specified in this Request.
>
> (2) All records referencing or concerning OMB review of ICR References Nos. 201301-0651-002 and 201209-0651-014 not otherwise included in Request #1 above.

---

[1] Citations to Plaintiff's Statement of Facts, which includes both its Statement of Undisputed Material Facts and its Response to Defendant's Statement of Undisputed Material Facts, are to the page numbers electronically generated by CM/ECF.

> (3) All records referencing or concerning OMB's interpretation and/or application of 5 CFR 1320.3(h), and any of its subparts, with respect to PTO rules 37 CFR 1.111, 1.115, 1.116, 1.130, 1.131 and/or 1.132.
>
> (4) All records referencing or concerning Gilbert P. Hyatt.

Def.'s Mot. for Summ. J., ECF No. 16 [hereinafter Def.'s Mot], Decl. of Dominic Mancini, ECF No. 16-1 [hereinafter Mancini Decl.], Ex. 2. Plaintiff defined the relevant time period for items 1–3 to be June 1, 2012, through the date of the request, but put no time limitation on item 4. *Id.* Plaintiff also suggested a list of search terms, including: "(1) regulatory provisions and Information Collection Request numbers such as '37 CFR 1.111' and '0651-0031;' (2) the last names of OMB and PTO staff who would likely have produced or received the requested records; and (3) terms that OMB staff were likely to include in relevant documents such as 'Manual of Patent Examination Procedure' and 'patent prosecution.'" Pl.'s Stmt. 2, ¶ 4 (quoting Mancini Decl., Ex. 2); *cf.* Def.'s Resp. Stmt. ¶ 4.

OMB's FOIA Officer assigned the request to the agency's Office of Information and Regulatory Affairs ("OIRA"). Def.'s Mot. at 3–4,[2] ¶ 3; Pl.'s Stmt. at 5, ¶ 1. Over the following weeks, OMB's Office of General Counsel ("OGC") worked with subject matter experts within OIRA to understand what types of responsive records existed. *Id.* On August 2, 2016, OMB responded to Plaintiff's First Request and indicated that (1) with respect to items 1–3, certain responsive records were available on a website maintained by OIRA, and (2) with respect to item 4, no responsive records were identified. Def.'s Mot. at 4, ¶ 4; Pl.'s Stmt. at 5, ¶ 1; Mancini Decl., Ex. 4. Plaintiff then appealed to OMB's FOIA Officer several days later, arguing in part that many responsive documents were not available on government websites and that OMB did not make a

---

[2] Citations to Defendant's Motion for Summary Judgment, which includes both its Statement of Undisputed Material Facts and its Memorandum in Support, are to the page numbers electronically generated by CM/ECF.

good faith effort to search for responsive documents. Pl.'s Stmt. at 2–3, ¶ 6; *see* Def.'s Resp. Stmt. ¶ 6; *see also* Mancini Decl., Ex. 4 (letter of appeal dated August 5, 2016).

Based on additional information provided in the course of Plaintiff's appeal, OGC submitted a request for a centralized search of the e-mail accounts of relevant OIRA staff. Def.'s Mot. at 4, ¶ 5; Pl.'s Stmt. at 5, ¶ 1. Using a Boolean search method, OGC directed the agency's Information Technology staff to search the e-mails of custodians "most likely to have responsive records" using a combination of terms referring to the specific regulatory provisions, e.g., "37 CFR 1.111," and Information Collection Request ("ICR") numbers sought by Plaintiff, e.g., "0651-0031." *Id.*; Pl.'s Stmt. at 3, ¶ 7; *see* Def.'s Resp. Stmt. ¶ 7. For this search, the agency defined the relevant time period as June 1, 2012, through June 10, 2016. Def.'s Mot. at 4, ¶ 5; Pl.'s Stmt. at 5, ¶ 1. After reviewing the records located in the search, OGC determined that a supplemental search was necessary; accordingly, the subject matter experts conducted a search of their own e-mails and identified a few other potentially responsive records. Def.'s Mot. at 4, ¶ 6; Pl.'s Stmt. at 5, ¶ 1.

On November 30, 2016, OMB responded to Plaintiff's administrative appeal and provided 424 pages of information, which were partially redacted pursuant to FOIA Exemptions 5 and 6. Pl.'s Stmt. at 3, ¶ 8; Def.'s Resp. Stmt. ¶ 8. Defendant also withheld 12 documents in full, citing Exemption 5. *Id.*

2. *Plaintiff's Second FOIA Request (2016-126)*

On August 1, 2016, Plaintiff submitted its second request ("Second Request") to OMB, seeking:

> (1) All records referencing or concerning the Paperwork Reduction Act, 44 USC § 3501 *et seq.*, its implementing regulations in 5 CFR Part 1320, and [OMB] guidance issued to agencies AND [PTO] rules 37 CFR 1.105, 1.129, 1.142, 1.143, 1.144, 1.145,

4

and/or 1.146, including but not limited to (a) all Information Collection Requests (ICRs), (b) OMB Form 83-1, 83-C, 83-D, 83-E certifications and supporting evidence thereto, (c) estimates of paperwork burden and their derivation pursuant to 5 C.F.R. § 1320.8(a)(4), and (d) Supporting Statements referencing or concerning these PTO rules or guidance.

(2) All records referencing or concerning Chapter 800 of the PTO's Manual of Patent Examining Procedure (MPEP) including but not limited to (a) all Information Collection Requests (ICRs), (b) OMB Form 83-1, 83-C, 83-D, 83-E certifications and supporting evidence thereto, (c) estimates of paperwork burden and their derivation pursuant to 5 C.F.R. § 1320.8(a)(4), and (d) Supporting Statements referencing or concerning these PTO rules or guidance.

(3) All records referencing or concerning OMB's interpretation and/or application of 5 CFR 1320.3(h), or any of its subparts with respect to (a) 37 CFR 1.105, 1.129, 1.142, 1.143, 1.144, 1.145, and/or 1.146; and/or (b) Chapter 800 of the MPEP; and/or (c) made or issued prior to July 31, 2013, regarding any PTO ICR, agency rule or guidance.

Mancini Decl., Ex. 5. Plaintiff identified the relevant time period for the Second Request to be from June 1, 2012, through the date of the request. The Second Request also provided search terms targeting: "(1) key regulatory provisions; (2) the last names of OMB and PTO staff who would likely have produced or received the requested records; and (3) terms that OMB staff were likely to include in relevant documents." Pl.'s Stmt. 3, ¶ 9; *see* Mancini Decl., Ex. 5; *cf.* Def.'s Resp. Stmt. ¶ 9.

Based on the face of the request and after consulting with subject matter experts within OIRA, OGC staff determined that the most effective way to capture responsive records was through a centralized e-mail search of relevant OIRA staff. Def.'s Mot. at 5, ¶ 10; Pl.'s Stmt. at 5, ¶ 1. Using a Boolean search method, the agency searched the e-mails of identified staff from June 1, 2012, through August 1, 2016, that contained combinations of terms referring to the specific regulatory provisions mentioned in the Second Request, as well as terms referring to the two ICR

5

numbers mentioned in the First Request. *Id.*; *see* Mancini Decl., Exs. 2, 5. OMB ultimately responded to Plaintiff's Second Request on December 30, 2016, and produced 252 pages of information, with partial redactions pursuant to Exemption 5. Pl.'s Stmt. at 3, ¶ 10; Def.'s Resp. Stmt. ¶ 10.

        3.     *Plaintiff's Third FOIA Request (2016-127)*

On August 2, 2016, Plaintiff submitted its third request ("Third Request") to OMB, seeking:

> (1) All records referencing or concerning the implementation of 44 U.S.C. § 3517(b) of the Paperwork Reduction Act, the regulation at 5 C.F.R. §1320.14(c), and implementing guidelines (if any), including but not limited to procedures and assignment of responsibilities for processing and deciding petitions thereunder. Federal Register notices are excluded from this request.
>
> (2) Copies of all petitions submitted to OMB under 44 U.S.C. § 3517(b) or 5 C.F.R. § 1320.14(c), and all records referencing or concerning such petitions, included but not limited to OMB communications with the petitioners and OMB decisions on such petitions.

Mancini Decl., Ex. 7. The stated time period for the Third Request was from May 22, 1995,[3] through the date of the request. As with the First and Second Requests, the Third Request suggested that several search terms be used. *See* Mancini Decl., Ex. 7.

OGC again determined that a centralized search of the e-mail of relevant OIRA staff was the most effective way to capture responsive records. Def.'s Mot. at 6, ¶ 14; *see* Pl.'s Stmt. at 6, ¶ 4. For this search, the agency restricted the relevant time period to January 20, 2009, through August 2, 2016, even though Plaintiff had sought records as early as 1995. *Id.* The initial search

---

[3] Plaintiff apparently chose May 22, 1995, as the relevant start date because that is when the statutory provision relevant to its Third Request was first adopted. *See* Pl.'s Opp'n, Pl.'s Mem. of Points and Authorities in Support of Its Cross-Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J., ECF No. 17-2, at 15.

term used was "5 C.F.R. § 1320.14." *Id.* After this initial search, the agency conducted a second search, which expanded the number of e-mail custodians and used a Boolean search method whose terms included the relevant statutory provisions, along with key words such as "[p]etition," "information collection," and "collection of information." Def.'s Mot. at 7, ¶ 15; *see* Pl.'s Stmt. at 6, ¶ 4. OGC ultimately ran three additional searches, altering the search terms to account for common misspellings and re-running searches of key terms to confirm its results. Def.'s Mot. at 7, ¶ 16; Pl.'s Stmt. at 5, ¶ 1. OMB responded to Plaintiff's Third Request on January 31, 2017, and produced 89 pages of information, with partial redactions pursuant to Exemptions 5 and 6. Pl.'s Stmt. at 4, ¶ 12; Def.'s Resp. Stmt. ¶ 12.

### B. Procedural Background

Plaintiff filed this action on September 12, 2016. Compl., ECF No. 1. After the parties filed cross motions for summary judgment, Defendant made a supplemental release of records to Plaintiff. Def.'s Reply at 1. Initially, Plaintiff had argued that Defendant could not rely on Exemption 5 to withhold these records because, in this case, the withheld records fell within the Paperwork Reduction Act's disclosure requirement. *See* Pl.'s Opp'n, Pl.'s Mem. of Points and Authorities in Support of Its Cross-Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J., ECF No. 17-2 [hereinafter Pl.'s Mem.], at 15. Defendant's subsequent release of these records to Plaintiff, however, effectively mooted any such challenge. Pl.'s Reply in Support of Cross-Mot. for Summ. J., ECF No. 21 [hereinafter Pl.'s Reply], at 5–6.

Additionally, Plaintiff contested the adequacy of the search. It argued that: (1) OMB's search was not designed to uncover all responsive records because the agency sought only e-mails from the custodians "most likely" to have the requested information and used only search terms "most likely" to produce responsive records, and OMB's declarant failed to aver that no other

7

document system likely contained responsive records; (2) the search was unreasonably restricted to e-mail accounts when responsive records were likely stored in other record systems, such as hard copy or other electronic files; and (3) OMB ignored the relevant time periods and search terms supplied by Plaintiff without establishing how a search using the requested parameters would be overly burdensome. Pl.'s Mem. at 13–16. These criticisms prompted additional searches and a supplemental affidavit from the agency. Def.'s Reply at 4–7. OMB reconfirmed with OIRA staff that no paper records exist; it examined OGC files and found no paper records; it searched other electronic records and found no responsive documents; and it submitted a supplemental affidavit representing that the declarant was "aware of no other locations that are likely to contain responsive records other than those searched." *Id.*, Second Decl. of Thomas Hitter, ECF No. 20-3 [Second Hitter Decl.], at 2–3.

As a consequence of these additional searches and representations, in its reply brief Plaintiff abandoned its arguments about the inadequacy of the locations searched.[4] That leaves only two outstanding search issues: (1) the agency's exclusion of certain time periods from the searches conducted as to the First and Third Requests, and (2) the agency's rejection of certain

---

[4] If the court is mistaken that Plaintiff's reply brief abandons its arguments concerning the locations searched, the court nonetheless finds the agency's search to be adequate in that respect and enters judgment in favor OMB as to that issue.

> To prevail on summary judgment, an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," which it can do by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."

*Reporters Comm. for Freedom of the Press v. FBI*, No. 17-5042, 2017 WL 6390484, at *2 (D.C. Cir. Dec. 15, 2017) (alteration in original) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Here, after conferring with subject matter experts, OMB searched for the requested records in both electronic and hard copy records systems, and declared that no other locations are likely to contain responsive records other than those searched. Second Hitter Decl. ¶¶ 5–10. Those averments satisfy the agency's burden at the summary judgment stage, and Plaintiff has offered nothing to overcome the good faith accorded to the agency's search efforts.

"less exacting [search] terms," such as "Rule 111," "patent application," "MPEP," and "ICR." Pl.'s Reply at 3. The court now turns to those remaining issues.

## III.　LEGAL STANDARD

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if those affidavits or declarations are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

## IV.　DISCUSSION

As noted, only two issues remain for the court's resolution. The first is whether OMB's search comes up short because it excluded certain time periods from its searches. Specifically, Plaintiff complains that OMB arbitrarily limited its search to records created on or after January 20, 2009, when Plaintiff placed no time limit on item 4 of the First Request and sought records

dating back to May 22, 1995, as to its Third Request.[5] Pl.'s Reply at 2–3. The second is whether OMB's search is inadequate because the agency used "hyper-specific search terms," such as citations to statutes and regulations and formal names, yet failed to use customary verbiage or abbreviations for those same terms. So, for example, Plaintiff protests that the agency used the search term "37 CFR 1.111," but not "Rule 111," and used "information collection requests," but not "ICR." *Id.* at 3–4. The court considers each of these issues in turn.

A.  **Excluded Time Periods**

The adequacy of an agency's search is measured by the standard of reasonableness. *See Reporters Comm.*, 2017 WL 6390484, at *2; *McGehee v. CIA*, 697 F.2d 1095, 1100 (D.C. Cir. 1983). The D.C. Circuit has applied the reasonableness standard to an agency's decision to limit the temporal scope of a search. *See McGehee*, 697 F.2d at 1101. "[A] temporal limit pertaining to FOIA searches . . . is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to ferret out requested documents." *Id.* The agency bears the burden of persuading the court that any time limit placed on a search is consistent with "its obligation to conduct a reasonably thorough investigation." *Id.*

Here, OMB's declaration—submitted by OMB's Associate General Counsel, Thomas Hitter—is inadequate because it does not explain why the agency limited its search for responsive records to those created on or after January 20, 2009, when in two instances Plaintiff asked for a different time period. As to item 4 of the First Request, Plaintiff put no date restriction on the search, and as to the Third Request, Plaintiff asked for records dating back to 1995. Hitter, however, does not articulate why OMB did not use Plaintiff's requested temporal parameters.

---

[5] The court does not understand Plaintiff to lodge the same complaint about items 1–3 of the First Request and the Second Request. Nor could it. For those requests, the agency's selected date of January 20, 2009, *precedes* Plaintiff's requested date of June 1, 2012. Mancini Decl. at 22, 38.

True, Hitter states that records from the mid-1990s would have been destroyed in the ordinary course and he alludes to the agency's transfer of records prior to 2009 to the National Archives and Records Administration. Second Hitter Decl. ¶ 11. But Hitter does not distinguish between hard copy and electronic records, an important distinction in this case given that responsive records turned up only through e-mail searches. Did the agency transfer e-mails to the National Archives and Records Administration in 2009? Hitter does not say. To fulfill its FOIA obligations, OMB either must expand the temporal scope of its search to the time periods requested by Plaintiff for item 4 of the First Request and the Third Request, or supplement its declaration to explain why using Plaintiff's preferred dates is inconsistent with the standard of reasonableness. *See James Madison Project v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) (noting the "glaring dates restriction issue" and remanding to the agency to conduct renewed searches or provide more detailed declarations).

Accordingly, Defendant's Motion for Summary Judgment is denied with respect to the temporal limits used to search for records responsive to item 4 of the First Request and the Third Request.

### B. Narrowed Search Terms

The court reaches a similar conclusion with respect to Plaintiff's challenge to the agency's choice of search terms. Agencies enjoy discretion in crafting search terms designed to identify responsive records, but that discretion "is not boundless." *Coffey v. Bureau of Land Mgmt. (Coffey I)*, 249 F. Supp. 3d 488, 498 (D.D.C. 2017). "[T]he search terms selected must pass muster under 'a standard of reasonableness.'" *Id.* (citation omitted). So long as the selected terms are reasonably calculated to unearth responsive documents, courts should avoid micromanaging the

agency's search. *Coffey v. Bureau of Land Mgmt.* (*Coffey II*), No. 16-653, 2017 WL 4355924, at *6 (D.D.C. Sept. 29, 2017).

In this matter, the court cannot determine based on Hitter's declarations whether the agency's search terms satisfy the standard of reasonableness. Plaintiff makes a persuasive case that, for at least some targeted searches, it seemingly would have been logical for the agency to have used the abbreviation or term commonly used in the industry to run searches through the relevant e-mails. *See* Pl.'s Reply at 4–5 & n.8–9. Take, for example, the term "information collection request." A second agency declarant, Dominic Mancini, the Deputy Administrator of OIRA, short-formed that term as "ICR" in his declarations, *see* Mancini Decl. ¶¶ 10, 25; Def.'s Reply, Second Decl. of Dominic Mancini, ECF No. 20-2, ¶¶ 5–7, yet OMB declined to run a search using that very abbreviation. Additionally, the Patent and Trademark Office appears to commonly use the term "Rule 111" to refer to 37 C.F.R. § 1.111,[6] but OMB elected not to use that ordinary term in favor of the full citation. OMB very well may have made a reasonable decision not to use terms like "ICR" and "Rule 111." But that reason is not at all apparent from its declarations. *Cf. Coffey II*, 2017 WL 4355924 at *6 (agency declarant explained why agency did not use a requested search term); *Immigration Defense Project v. U.S. Immigration and Customs Enf't*, 208 F. Supp. 3d 520, 528 (S.D.N.Y. 2016) (noting that an agency fulfills its obligations under FOIA, even when it does not use requested search terms, "so long as the agency provide[s] an explanation as to why the search term was not used"). At most, Hitter states that, after OMB staff met with subject matter experts and gained an understanding of how work is conducted within the agency, "OMB staff concluded that the search terms utilized were reasonably tailored to uncover all responsive records

---

[6] *See, e.g.*, Rules of Practice Before the Board of Patent Appeals and Interferences, 69 Fed. Reg. 49,960 (Aug. 12, 2004); Notice of Public Hearing and Request for Comments on Procedures for Recording Patent Prosecution File Histories, 62 Fed. Reg. 49,471 (Sept. 22, 1997).

within the electronic records systems searched." Second Hitter Decl. ¶ 12. However, that statement is entirely conclusory. *See Wiesner v. FBI*, 577 F. Supp. 2d 450, 458 (D.D.C. 2008) (rejecting as conclusory an agency submission that "declare[d] that a search using any of [the requested] terms would fail"). In short, where, as here, a FOIA requester suggests search terms that are common in practice, but the agency elects not to use them, the failure of the agency to explain its choices prevents the court from evaluating the reasonableness of the agency's search method.

Accordingly, upon remand, OMB must either run Plaintiff's requested search terms or explain to the court why its search terms "are reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Hall v. CIA*, 668 F. Supp. 2d 172, 184 n.9 (D.D.C. 2009) (remanding for the agency "to explain why it believes its search terms are sufficient to locate responsive documents or why [the requester's] suggested additional search terms were not necessary or useful to a reasonable search"). Defendant's Motion for Summary Judgment as to the adequacy of its search terms is therefore denied.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Cross-Motion for Summary Judgment is denied in part.

The parties shall meet and confer and no later than 21 days from this date advise the court how they intend to proceed in this matter.

Dated: December 19, 2017

Amit P. Mehta
United States District Judge